UNITED STATES DISTRICT COURT
THE NOTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

   -against-

BRANDON MONTANARI,

          Defendant.

**DEFENDANT'S SENTENCING MEMORANDUM**

5:25-CR-136(BKS)

**Introduction:**

The punishment imposed by a Court at time of sentencing, "should fit the offender and not merely the crime." *Pepper v. United States,* 562 U.S. 476, 487-88 (2011) (quoting *Williams v. New York,* 337 U.S. 241, 247 (1949)).

As one court has explained: "[S]urely, if ever a man is to receive credit for the good he has done, and his immediate misconduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance. This elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice, was plainly part of what Congress had in mind when it directed courts to consider, as a necessary sentencing factor, the history and characteristics of the defendant." *United States v. Adelson,* 441 F. Supp. 2d 506, 513-14 (S.D.N.Y. 2006) (internal quotation omitted).

In this case, it is respectfully suggested that the scales of justice will be appropriately balanced by the imposition of a probationary sentence for Mr. Montanari.

**Procedural History:**

This matter comes before the Court for sentencing following Mr. Montanari's guilty plea on April 23, 2025, to a one count Information charging him with Deprivation of Rights under Color of Law, in violation of 18 U.S.C. §242. Mindful that sentencing rests in the discretion of the Court, the Defendant submits this sentencing memorandum outlining the facts and circumstances in support of the Defendant's sentencing recommendation of a period of probation.

**Nature and Circumstances of the Offense:**

As set forth in the plea agreement and further detailed in the presentence investigation report, the instant offense occurred while Mr. Montanari was employed by the New York State Department of Corrections and Community Supervision ("DOCCS") at Mid-State Correctional Facility ("Mid-State").

Brandon committed an offense that ended his career in shame, and he is deeply remorseful for his misdeed. Brandon recognizes that what he did was wrong and completely unacceptable. The circumstances of Brandon's offense, for which he has now accepted responsibility, are not in significant dispute. His acceptance of responsibility statement submitted to probation was not an attempt to justify his actions. Rather, he readily agrees that there was no justification for what he did and what he failed to do. He accepts responsibility for his wrongdoing and asks this Court to consider his misdeeds in the context of his entire life.

As detailed in the presentence investigation report, Brandon had been a hardworking, responsible citizen prior to this event and this episode is not indicative of how he has tried to live his life.

**Presentence Investigation Report**

Mr. Montanari agrees with the criminal history category, guidelines calculation and statutory sentencing options reflected in the presentence investigation report.

**Sentencing Considerations Under 18 U.S.C § 3553(a):**

Congress requires District Courts to impose a sentence that is "sufficient, but not greater than necessary . . . (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *18 U.S.C. § 3553(a)*. The Second Circuit has explained that, "[i]n deciding what sentence will be 'sufficient, but not greater than necessary' to further the goals of punishment . . . a sentencing judge must have a generosity of spirit, that compassion which causes one to know what it is like to be in trouble and in pain." *United States v. Singh*, 877 F.3d 107, 121 (2d Cir. 2017).

When imposing a sentence, the United States Sentencing Guidelines Manual ("USSG" or the "Guidelines") instructs the court to follow a three-step analysis: first, "[t]he court shall determine the kinds of sentence and the guideline range as set forth in the guidelines" under 18 U.S.C. § 3553(a)(4); second, the court shall calculate any applicable departures from the guideline range authorized by specific policy statements in the USSG under 18 U.S.C. § 3553(a)(5); and third, "[t]he court shall then consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole" to consider if any variance from the guideline range is warranted. *See* USSG §1B1.l(a)( c); *see also United States v. Selioutsky,* 409 F.3d 114, 118 (2d Cir. 2005).

In other words, although the Guidelines must be consulted, they are merely advisory and

are not presumptively reasonable. *United States v. Cavera,* 550 F .3d 180, 190 (2d Cir. 2008). Sentencing courts are free to sentence below the Guidelines and often do.[1]

**Brandon's Personal History and Current Circumstances**

As detailed in the presentence investigation report, Brandon is a lifelong resident of Western New York. He has been continuously gainfully employed since his graduation from high school and has never been convicted of a crime prior to the instant offense.

In 2019, hoping to secure employment with good benefits and the possibility of a secure retirement, Brandon obtained a job as a Corrections Officer with DOCCS. It turns out this was the worst decision Brandon ever made.

Brandon was introduced to a stressful culture of violence which severely affected his emotional equilibrium and mental health. He entered DOCCS as a docile, conscientious young man and left four years later with the psychic scars sustained from being constantly exposed to the dangerous, degrading and deplorable conditions of the prison system. The worst of it was the ultimate recognition that he had become complicit in the very system he had grown to despise.

However, it didn't start out that way. Early in his career Brandon was assigned to Sing Sing Correctional Facility. This posting was over seven hours from home and required him to live in a camper during the work week and then drive home on days off. Despite this hardship, Brandon was committed to doing what he had to do to secure a financial future for his family. He was engaged at work and took an active interest in the well-being of the incarcerated individuals he supervised. As recounted in a letter from Ashley Ernle, a friend who knew him at the time, Brandon always spoke of the inmates with "respect and positivity." He regularly intervened in potential crisis situations and earned accolades from DOCCS for his actions in helping to save an

---

[1] U.S. Sentencing Commission Statistical Information Packet, Northern District of New York (2024), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2024/nyn24.pdf

inmate's life, as reflected in the letter of appreciation attached hereto as Exhibit "A".

However, as time went on, Brandon's moral compass began to stray and the ethos of "the blues versus the greens" (corrections officers versus inmates) began to take hold. This attitude was especially pronounced when he was transferred to Mid-State Correctional Facility. Brandon was well aware that any sign of less than total allegiance to "the blues" could result in serious consequences for his personal safety. Knowing that he succumbed to those concerns and held that mindset is a source of great shame and life-lasting regret.

Brandon knows that his actions were wrong, and he is eternally grateful that incarcerated individual J.B. did not suffer more serious injuries. He also knows that his initial decision to deny any knowledge of the incident was wrong and indefensible.

Since he stopped working as a corrections officer, Brandon's life has improved dramatically. He has completed automotive training and has obtained a diesel mechanic certification which has allowed him to obtain full-time, good-paying employment at a local car dealership.

Since leaving DOCCS, Brandon has married, bought a home across the street from the firehouse where he volunteers and he continues to be a loving and supportive father and stepfather.

We provide to the Court, under separate cover, fifteen letters of support from Brandon's friends and family.

All of these letters attest to Brandon's native and fundamental qualities as a caring son, friend and father. They describe a man who volunteers in his community, supports his friends in need and is the financial and emotional anchor of his young family.

We also include a letter from Kelly Gordon, the licensed mental health counselor who is

treating Brandon's daughter. This Court may consider Brandon's significant role with his family when deciding upon his sentence. *See United States v. Davis,* 2008 U.S. Dist. LEXIS 44030 (S.D.N.Y. June 5, 2008). In *Davis,* the court found that any custodial sentence would "halt [defendant]'s significant positive impact on his children's life," and "would be disastrous to [his] family." Such considerations are especially relevant in this case where Brandon's daughter is already suffering mental health issues as the result of being effectively abandoned by her biological mother. Brandon's absence from the family would only exacerbate her difficulties. Furthermore, the Montanari family stands in jeopardy of losing their home if Brandon is not working and contributing to the family financially. While Brandon is unquestionably responsible for the consequences of his actions, and whatever collateral consequences befall his loved ones is a situation of his own making, we ask this Court to take these factors into consideration when fashioning his sentence.

**Defense Sentencing Recommendation:**

Due to his unlawful actions, Mr. Montanari will forever be brandished a "criminal" and will face a lifetime of collateral consequences relating to his conviction. He will face diminished employment opportunities, the loss of certain civil rights and entitlements, as well as the countless humiliations and indignities commonly associated with his status as a convicted felon. It is respectfully submitted that these consequences, coupled with probation and a lengthy term of community service, will constitute sufficient punishment in this case. A sentence of probation is a serious sentence and has been traditionally viewed as both rehabilitative and punitive. As the Supreme Court has noted:

> We recognize that custodial sentences are qualitatively more severe than probation or a sentence of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty.

> Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases, receiving permission from their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony and refrain from excessive drinking. Most probationers are also subject to individual "specialized conditions" imposed by the Court. *Gall v. United States,* 552 US 38, 48-49 (2007), (internal citations omitted).

Imposing such a sentence would also benefit society at large by having Mr. Montanari remain a tax-paying member of society while also benefiting from the worthwhile work he will perform as part of his community service. Such a sentence would also allow Mr. Montanari to continue to provide the financial and emotional support his family needs. In sum, such a sentence would be sufficient, but not greater than necessary, to serve the statutory purposes of sentencing.

If this honorable Court disagrees with the foregoing and is inclined to order a custodial sentence, it is respectfully requested that the Court consider a period of home confinement with electronic monitoring during non-working hours or a period of intermittent confinement so that Mr. Montanari can continue to work to support himself, his wife and their two children.

Finally, as substantiated in the presentence investigation report, Mr. Montanari does not have the financial ability to pay a monetary fine and we ask the Court to impose none.

DATED:  July 31, 2025                                O'CONNELL AND ARONOWITZ

By:_____
Michael P. McDermott, Esq.
Attorneys for Defendant
Office and P.O. Address
54 State Street, 9th Floor
Albany, New York 12207
Phone: (518) 462-5601
Fax: (518) 462-2670